1  DAVID F. FAUSTMAN, SBN 081862
2  JAVIER C. RIVERA, SBN 243631
   FOX ROTHSCHILD LLP
3  1800 Century Park East, Suite 300
   Los Angeles, California 90067-3005
4  Tel: 310.598.4150
5  Fax: 310.556.9828

6
   Attorneys for Defendant
7  AMSCAN INC.

8
9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11
12  A-1 BUSINESS PRODUCTS, INC.        CASE NO. CV09 04016 SJO (RCx)
    DBA PREMIUM FINANCIAL
13  SERVICES,
                                       **DEFENDANT AMSCAN INC.'S**
14           Plaintiff,                **NOTICE OF REMOVAL OF**
                                       **ACTION UNDER 28 U.S.C. § 1332**
15                                     **(DIVERSITY)**
16      vs.

17  AMSCAN, INC. DBA CALIFORNIA
18  AMSCAN INCORPORATED AND
    DOES 1 TO 50, INCLUSIVE,
19
20           Defendants.

21
22
23
24
25
26
27
28

                            1
                    NOTICE OF REMOVAL
LA1 20109v1 06/04/09

**FILED**

2009 JUN -4  PM 3: 41

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendant AMSCAN INC. ("Amscan") removes to this Court the state court action described below, based on the Court's removal jurisdiction under 28 U.S.C. Section 1441, and the Court's diversity jurisdiction under 28 U.S.C. Section 1332(a).

## I.   PLEADINGS AND PROCEEDINGS TO DATE

On or about April 27, 2009, Plaintiff A-1 Business Products, Inc. dba Premium Financial Services ("Plaintiff") commenced an action in the Superior Court of California in and for the County of Los Angeles, entitled *A-1 Business Products, Inc. dba Premium Financial Services v. Amscan Inc. dba California Amscan Incorporated and Does 1 to 50, Inclusive*, as Case No. SC102817 ("State Action").  Amscan first received a copy of the Complaint on May 5, 2009 when a copy of the Summons and Complaint was served on Paralegal, Janine Huber, at Amscan Inc. in Elmsford, New York.  Also served was a civil case cover sheet, Notice of Case Assignment to Individual Calendar Court, Notice to Litigants, Notice of Court Mediation Program, and Scheduling Information.  True and correct copies of these documents are attached hereto as Exhibit 1.  A true and correct copy of Amscan's Answer filed in the state court action is attached hereto as Exhibit 2.  Exhibits 1 and 2 comprise all process, pleadings and orders served and filed in the State Action.

LA1 20109v1 06/04/09

1  |  This Notice of Removal is timely in that it has been filed and served within 30

2  3  days of the service of Plaintiff's summons and Complaint on the defendant. *Murphy*

4  *Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (defendant's

5  period for removal will be no less than 30 days from service).

6  ## II.  **SUBJECT MATTER JURISDICTION**

7  This action is a civil action over which this Court has original jurisdiction

8  9  under 28 U.S.C. section 1332 and is one which may be removed to this Court by

10  Defendant pursuant to the provisions of 28 U.S.C. section 1441 because it is a civil

11  12  action between citizens of different states and the matter in controversy exceeds the

13  sum of $75,000.00, exclusive of interest and costs.

14  ### A.  **Diversity of Citizenship Exists Between The Parties**

15  Plaintiff A-1 Business Products, Inc. is a corporation organized and existing

16  17  under the laws of the State of California. (See Complaint, ¶ 2). Amscan was, at the

18  time of the filing of this action, and still is, a corporation incorporated under the

19  laws of the State of New York, having its principal place of business in New York.

20  21  (See Declaration of Joseph Zepf ("Zepf Dec."), filed herewith, at ¶ 2.)

22  A corporation's principal place of business is the state which contains a

23  substantial predominance of corporate operations. *See Tosco Corp. v. Communities*

24  25  *for a Better Environment*, 236 F.3d 495, 500 (9th Cir. 2001) (the "place of

26  operations" test should be used to determine a corporation's principal place of

27  business). At all times alleged in the complaint through the present, Amscan's

28

3

NOTICE OF REMOVAL

1   executive office and principal place of business has been in New York. All

2   decisions regarding the company's administration, business strategy, and finances

3   are made in New York. (Zepf Dec. at ¶ 2.) Amscan's executives and officers are

4   located in New York, including Joseph J. Zepf, Vice President, General Counsel and

5

6   Secretary. (Zepf Dec. at ¶ 2.) Furthermore, the majority of Amscan's executive and

7   administrative functions are performed in New York. (Zepf Dec. at ¶ 2.) While

8

9   Amscan employs individuals in five states and in Australia, Canada, England,

10  Germany, Hong Kong, Japan, and Mexico, the substantial predominance of

11  Amscan's business activities occurs in New York. (See Zepf Dec. at ¶ 2.)

12

13  Therefore, New York is Amscan's principal place of business. Even if the Court

14  applied the "nerve center test" to determine Amscan's principal place of business, it

15  is clear from the previously-mentioned facts that New York meets that standard as

16

17  well. *See Tosco*, 236 F.3d at 500. Under that test, a corporation's principal place of

18  business is the state where the *majority* of its executive and administrative functions

19

20  are performed. *Id.* Hence, complete diversity exists between the parties.

21      Further, Amscan believes and on that basis alleges that none of the

22  fictitiously-named defendants (DOES 1 – 50) have been identified by Plaintiff or

23

24  served with the Summons and Complaint. 28 USC § 1441(a); *Newcombe v. Adolf*

25  *Coors Company*, 157 F.3d 686, 690-691 (9th Cir. 1998). Where the Court has "no

26

27  information as to who they are or where they live or their relationship to the action,"

28  it is proper to disregard Doe defendants upon removal. *McCabe v. General Foods*

*Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) ("[U]nknown defendants sued as 'Does' need not be joined in a removal petition."). Based on the foregoing, complete diversity exists between Plaintiff and Defendant.

### B.    The Jurisdictional Minimum Has Been Established.

Defendant is informed and believes and thereon alleges that it is facially apparent from the Complaint that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. The removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $75,000. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). In making this assessment, the court may consider the facts in the removal petition including summary-judgment-type evidence relevant to the amount in controversy at the time of removal. *Id.* In measuring the amount in controversy, a court must assume that any admissions in the Complaint are true. *See Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008). The allegations in the Complaint show that the amount in controversy exceeds $75,000.[1]

---

[1] Defendant disputes that it has any actual liability to Plaintiff whatsoever. Nonetheless, for the limited purpose of determining removal jurisdiction, "the ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn*, 536 F.Supp.2d at 1205 (emphasis in original). Therefore, although Defendant believes it "actually owes" Plaintiff nothing and that Plaintiff has suffered no damages, it is clear that Plaintiff has put "in controversy" more than the jurisdictional minimum.

LA1 20109v1 06/04/09

Plaintiff alleges three causes of action: (1) common count; (2) account stated; and (3) breach of oral contract. Plaintiff is seeking the sum of $835,366.90 plus interest, costs of suit, and such other relief as deemed proper by the Court. (Complaint, ¶¶ 16, 19, 23, and prayer ¶ 1.)

Accordingly, removal is proper because there is complete diversity between Plaintiff and Defendant, and the jurisdictional minimum amount in controversy has been met.

## III.   VENUE

This action is currently pending in the Superior Court of California in the County of Los Angeles and, therefore, venue in this Court is proper pursuant to 28 U.S.C. § 84(c) and 28 U.S.C. § 1391(a).

## IV.   NOTIFICATIONS

As required by 28 U.S.C. § 1446(d), Amscan will provide prompt written notice to Plaintiff, by counsel, of removal of this action to federal court. As required by 28 U.S.C. § 1446(d), Amscan will file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

6

NOTICE OF REMOVAL

LA1 20109v1 06/04/09

1    WHEREFORE, Defendant Amscan hereby removes this action from the State

2  Court to the United States District Court for the Central District of California.

3

4

5  Dated:        June 4, 2009              FOX ROTHSCHILD LLP

6

7

                                          By
8

9                                         DAVID F. FAUSTMAN
                                          JAVIER C. RIVERA
10                                        Attorneys for Defendant
                                          AMSCAN INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

7

NOTICE OF REMOVAL

LA1 20109v1 06/04/09

**EXHIBIT 1**

**SUMMONS**
*(CITACION JUDICIAL)*

SUM

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY

MAY 0 7 2009

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AMSCAN INC. DBA CALIFORNIA AMSCAN INCORPORATED AND DOES 1 TO 50, INCLUSIVE

MAY 0 7 2009

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
A-1 BUSINESS PRODUCTS, INC. DBA PREMIUM FINANCIAL SERVICES

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.   Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.   Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Los Angeles Superior Court - West District - Santa Monica Courthouse
1725 Main Street
Santa Monica, CA 90401

CASE NUMBER
*(Número del Caso):*
SC102877

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert A. Weinberg, Esq., Law Offices of Robert A. Weinberg, SBN: 110144
18034 Ventura Boulevard, #511, Encino, CA 91316                    (818)705-3254

DATE:                                  JOHN A. CLARKE            Clerk, by _____ , Deputy
*(Fecha)*  APR 27 2009                                            *(Secretario)*  D. MC KINNEY        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐  as an individual defendant.
2. ☐  as the person sued under the fictitious name of *(specify):*

3. ☒  on behalf of *(specify):*  Amscan Inc. DBA California Amscan Incorporated

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒  by personal delivery on *(date):* 5/5/09

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

www.accesslaw.com

ROBERT A. WEINBERG, ESQ.  Bar #110144
LAW OFFICES OF ROBERT A. WEINBERG
18034 Ventura Boulevard., #511
Encino, California 91316-3516
Telephone:      (818) 705-3254
Facsimile:      (818) 705-4664

Attorney for Plaintiff

CONFORMED COPY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

WEST DISTRICT - SANTA MONICA COURTHOUSE

| | |
|---|---|
| A-1 BUSINESS PRODUCTS, INC. DBA PREMIUM FINANCIAL SERVICES, | CASE NO.  SC105517 |
| Plaintiff, | COMPLAINT FOR: |
| vs. | 1. COMMON COUNT |
| | 2. ACCOUNT STATED |
| AMSCAN INC. DBA CALIFORNIA AMSCAN INCORPORATED AND DOES 1 TO 50, INCLUSIVE, | 3. BREACH OF ORAL CONTRACT |
| Defendants. | UNLIMITED: OVER $25,000 |

Plaintiff alleges:

ELIZABETH GRIMES
INITIAL CASE MANAGEMENT REVIEW
AND CONFERENCE
Dept K 8:30 am       AUG 1 1 2009

INTRODUCTION

1.      At all times herein mentioned, A-1 Business Products, Inc. dba Premium Financial Services  hereinafter referred to as "Plaintiff"), was licensed by the State of California, under the applicable sections of the Business and Professions Code, to do the kinds of work hereafter alleged.

2.      At all times herein mentioned Plaintiff was, and now is, a corporation organized and existing under the laws of the State of California and actually doing business in the City of Santa Monica, County of Los Angeles, State of California.

3.      The true names and capacities, whether individual, corporate, associate or otherwise,

- 1 -

COMPLAINT

of Defendants Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names, and Plaintiff will ask leave to amend this complaint to show their true names and capacities, together with the appropriate charging allegations, when the same have been ascertained.

4.      Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendant, and each of them, were the agents and employees of each of the other defendants, and were acting within the scope of such agency and employment.

5.      The obligation sued on herein was incurred in or is payable in the County of Los Angeles, State of California.

6.      Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendant, Amscan Inc. dba California Amscan Incorporated, (hereinafter referred to as "Amscan"), was, and at all times pertinent hereto is, a New York corporation, qualified to do and doing business in the State of California.

7.      On or about March 25, 2002, Plaintiff and Destiny Plastics, Inc., entered into a Factoring and Security Agreement, whereby Destiny Plastics, Inc., contracted with Plaintiff for accounts receivable financing. Said Agreement gave Plaintiff a secured interest in all accounts receivable in Destiny Plastics, Inc. A copy of said Factoring and Security Agreement is attached hereto as Exhibit "A" and incorporated herein by reference (hereinafter "Agreement").

8.      Within the last two (2) years, Destiny Plastics, Inc., provided plastic products to Defendant Amscan named in this Cause of Action, and each of them, at the special instance and request of said Defendants.

9.      Pursuant to said Agreement, Plaintiff demanded the monies due, owing and unpaid from Amscan to Destiny Plastic, Inc.

10.     Attached hereto as Exhibit ""B" and incorporated herein by reference, is a Notice dated December 2, 2008, with a list of outstanding invoices from Plaintiff to Defendant Amscan.

11.     Pursuant to said Notice from Plaintiff to Defendant Amscan, there is now due, owing and unpaid from Amscan the sum of $835,366.90.

12.     Despite the demand for payment to Defendant Amscan, nothing has been paid to

- 2 -

COMPLAINT

date and there is now due, owing and unpaid from Defendant Amscan to Plaintiff the sum of $835,366.90.

## FIRST CAUSE OF ACTION

## COMMON COUNT

### (Defendants Amscan & Does 1 through 50)

13.    Plaintiff refers to the allegations contained in Paragraphs 1 through 12 of the Introduction and by this reference incorporates the same herein as though more fully set forth at length.

14.    Within the last two (2) years, Defendant Amscan became indebted to Destiny Plastics, Inc., and thereafter to Plaintiff pursuant to the Agreement.

15.    At all times herein mentioned, the above items were, and are, the reasonable value of $835,366.90 after deducting all just credits and offsets.

16.    No part of the above sum has been paid and there is now due, owing and unpaid from Defendants named herein, and each of them, to Plaintiff, the sum of $835,366.90 together with interest thereon at the rate of 18% per annum until paid.

## SECOND CAUSE OF ACTION

## (ACCOUNT STATED)

### (Defendants Amscan and Does 1 through 50)

17.    Plaintiff refers to the allegations contained in Paragraphs 1 through 12 of the Introduction and by this reference incorporates the same herein as though more fully set forth at length.

18.    Within the last two (2) years, at Santa Monica, California, Defendant Amscan became indebted to Destiny Plastics, Inc., for plastic products provided and, thereafter, pursuant to the Agreement, Defendant Amscan is indebted to Plaintiff in the sum of $835,366.90 after deducting all just credits and offsets.

19.    Neither the whole nor any part of the above sum has been paid although demand therefore has been made, and there is now due, owing and unpaid the sum of $835,366.90, together

COMPLAINT

with interest thereon at the rate of eighteen percent (18%) per annum until paid.

## THIRD CAUSE OF ACTION

### (BREACH OF ORAL CONTRACT)

#### (Defendants Amscan and Does 1 through 50)

20.     Plaintiff refers to the allegations contained in Paragraphs 1 through 12 of the Introduction and by this reference incorporates the same herein as though more fully set forth at length.

21.     Neither the whole nor any part of the above sum has been paid although demand therefore has been made, and there is now due, owing and unpaid from the Defendants, and each of them, the sum of $835,366.90, together with interest thereon at the rate of eighteen percent (18%) per annum until paid.

22.     Plaintiff has performed all terms, conditions and covenants on its part to be performed prior to the breach of Defendants named in this Cause of Action.

23.     As a direct and proximate result of the foregoing, and the breach by Defendants named herein, Plaintiff has been damaged in the sum of $835,366.90 and interest on said sum at the rate of eighteen percent (18%) per annum.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     On the First, Second, and Third Causes of Action as against Defendants named therein respectively, the sum of $835,366.90, together with interest thereon at the rate of eighteen percent (18%) per annum;

2.     For costs of suit herein incurred; and

3.     For such other and further relief as to this Court seems just and proper.

DATED: April 15, 2009

LAW OFFICES OF ROBERT A. WEINBERG

BY: _____
ROBERT A. WEINBERG,
Attorney for Plaintiff

- 4 -

COMPLAINT

EXHIBIT "A"

# FACTORING AND SECURITY AGREEMENT

THIS FACTORING AND SECURITY AGREEMENT is made as of March 25, 2002 by and between **Destiny Plastics, Inc.** ("Seller") and **Premium Financial Services** ("Purchaser").

1. **Definitions**. The following terms used herein shall have the following meaning. All capitalized terms not herein defined shall have the meaning set forth in the Uniform Commercial Code:

   1.1. **"Avoidance Claim"** - any claim that any payment received by Purchaser from or for the account of an Account Debtor is avoidable under the Bankruptcy Code or any other debtor relief statute.

   1.2. **"Chosen State:** California.

   1.3. **"Closed"** - a Purchased Account is closed upon the first to occur of (i) receipt of full payment by Purchaser or (ii) the unpaid Face Amount has been charged to the Reserve Account by Purchaser pursuant to the terms hereof.

   1.4. **"Collateral"** - all now owned and hereafter acquired personal property and fixtures, and proceeds thereof, (including proceeds of proceeds) including without limitation Accounts, including health-care insurance receivables, Chattel Paper, Inventory, Equipment, Instruments, including Promissory Notes, Investment Property, Documents, and General Intangibles

   1.5. **"Eligible Account"** - an Account which is acceptable for purchase as determined by Purchaser in the exercise of its reasonable sole credit or business judgment.

   1.6. **"Events of Default"** - See Section . 12.1.

   1.7. **"Face Amount"** - the face amount due on an Account at the time of Purchase.

   1.8. **"Factoring Fee"** - a percent of the Face Amount of a Purchased Account based on the period of time from the Purchase Date to the date on which the Purchased Account is closed. **Fee Plan 134**

   1.9. **"Invoice"** - the document that evidences or is intended to evidence an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates.

   1.10. **"Late Payment Date"** - the date which is 200 days from the date on which a Purchased Account was Purchased.

   1.11. **"Late Payment Interest Charge"** - 4 % percent per month.

   1.12. **"Maximum Credit Limit"** - $200,000.00

1.13. **"Misdirected Payment Fee"** - fifteen percent (15%) of the amount of any payment on account of a Purchased Account which has been received by Seller and not delivered in kind to Purchaser on the next business day following the date of receipt by Seller.

1.13.1 **"Missing Notation Fee"** – 15% of the Face Amount, on any invoice where the Post Office Box 7025, Santa Monica, CA 90401 is not noted.

1.14. **"Obligations"** - all present and future obligations owing by Seller to Purchaser whether or not for the payment of money, whether or not evidenced by any note or other instrument, whether direct or indirect, absolute or contingent, due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original or renewed or extended, whether arising before, during or after the commencement of any Bankruptcy Case in which Seller is a Debtor, including but not limited to any obligations arising pursuant to letters of credit or acceptance transactions or any other financial accommodations.

1.15. **"Parties"** - Seller and Purchaser.

1.16. **"Purchase Date"** - the date on which Seller has been advised in writing that Purchaser has agreed to purchase an Account.

1.17. **"Purchase Price"** - the Face Amount.

1.18. **"Purchased Accounts"** - Accounts purchased hereunder which have not been Repurchased.

1.19. **"Repurchased"** - an Account has been repurchased when Seller has paid to Purchaser the then unpaid Face Amount.

1.20. **"Required Reserve Amount"** - the Reserve Percentage multiplied by the unpaid balance of Purchased Accounts.

1.21. **"Reserve Account"** - a bookkeeping account on the books of the Purchaser representing an unpaid portion of the Purchase Price, maintained by Purchaser to ensure Seller's performance with the provisions hereof.

1.22. **"Reserve Percentage"** - 20%.

1.23. **"Reserve Shortfall"** - the amount by which the Reserve Account is less than the Required Reserve Amount.

1.24. **"Schedule of Accounts"** - a form supplied by Purchaser from time to time wherein Seller lists such of its Accounts as it requests that Purchaser purchase under the terms of this Agreement.

2. **Sale; Purchase Price; Billing; Reserve**

2.1. Assignment and Sale.

2.1.1. Seller shall sell to Purchaser as absolute owner, with full recourse, such of Seller's Accounts as are listed from time to time on Schedules of Accounts.

2.1.2. Each Schedule of Accounts shall be accompanied by such documentation supporting and evidencing the Account as Purchaser shall from time to time request.

2.1.3. Purchaser may (but need not) purchase from Seller such Accounts as Purchaser determines to be Eligible Accounts, so long as the unpaid balance of Purchased Accounts does not exceed, before and after such purchase, the Maximum Credit Limit.

2.1.4. Purchaser shall pay the Purchase Price, of any Purchased Account, less any amounts due to Purchaser from Seller, to Seller within two (2) business days of the Purchase Date, whereupon the Accounts shall be deemed purchased hereunder.

2.2. **Billing.** Purchaser may send a monthly statement to all Account Debtors itemizing their account activity during the preceding billing period. All Account Debtors will be instructed to make payments to Purchaser.

2.3. **Reserve Account.**

2.3.1. Seller shall pay to Purchaser on demand the amount of any Reserve Shortfall.

2.3.2. Purchaser shall pay to Seller upon Seller's request, any amount by which the Reserve Account exceeds the Required Reserve Amount.

2.3.3. Purchaser may charge the Reserve Account with any Obligation, including any amounts due from Seller to Purchaser hereunder.

2.3.4. Purchaser may pay any amounts due Seller hereunder by a credit to the Reserve Account;

2.3.5. Upon termination of this agreement Purchaser may retain the Reserve Account:

2.3.5.1. for ninety days thereafter to be applied to payment of any Obligations that were unknown to Purchaser at the time of termination, and

2.3.5.2. Unless and until Seller has executed and delivered to Purchaser a general release in the form of Exhibit B hereto.

3. **Authorization for Purchases.** Subject to the terms and conditions of this Agreement, Purchaser is authorized to purchase Accounts upon telephonic, facsimile or other instructions received from anyone purporting to be an officer, employee or representative of Seller.

4. **Fees and Expenses.** Seller shall pay to Purchaser:

4.1. **Factoring Fee.** The Factoring Fee on the date on which a Purchased Account is closed.

Page 3 of 13

**4.2. Misdirected Payment Fee.** Any Misdirected Payment Fee immediately upon its accrual.

**4.3. Missing Notation Fee.** The Missing Notation Fee on any Invoice that is sent by Seller to an Account Debtor which does not contain the notice as required by Section 9.3 hereof.

**4.4. Late Payment Interest..** The Late Payment Interest Charge, on demand, on:

4.4.1. All past due amounts due from Seller to Purchaser hereunder; and

4.4.2. The amount of any Reserve Shortfall.

**4.5. Out-of-pocket Expenses.** The out-of-pocket expenses directly incurred by Purchaser in the administration of this Agreement such as wire transfer fees and outgoing overnight or expedited delivery fees.

**5. Chargeback of Accounts.** Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount thereof, together with any unpaid fees relating to the Purchased Account on demand:

5.1. Any Purchased Account, the payment of which has been disputed by the Account Debtor obligated thereon, Purchaser being under no obligation to determine the bona fides of such dispute;

5.2. Any Purchased Account for with Seller has breached its warranty under Section 11 hereunder.

5.3. Any Purchased Account owing from an Account Debtor which in Purchaser's reasonable credit judgement has become insolvent;

5.4. All Purchased Accounts upon the occurrence of an Event of Default, or upon the termination date of this Agreement; and

5.5. Any Purchased Account which remains unpaid beyond the Late Payment Date.

**6. Security Interest.**

6.1. As collateral securing the Obligations, Seller grants to Purchaser a continuing first priority security interest in and to the Collateral.

6.2. Notwithstanding the creation of the above security interest, the relationship of the parties shall be that of Purchaser and Seller of accounts, and not that of lender and borrower.

**7. Authorization to Purchaser.**

7.1. Seller hereby irrevocably authorizes Purchaser at Seller's expense, to exercise at any time any of the following powers until all of the Obligations have been paid in full: (a) receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, any and all

KSh

cash, checks, commercial paper, drafts, remittances and other instruments and documents relating to the Collateral or the proceeds thereof, (b) take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon the accounts and other Collateral, (c) after an Event of Default, change the address for delivery of mail to Seller and to receive and open mail addressed to Seller, (d) after an Event of Default, extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all accounts or other Collateral which includes a monetary obligation and discharge or release any account debtor or other obligor (including filing of any public record releasing any lien granted to Seller by such account debtor), without affecting any of the Obligations, (e) pay any sums necessary to discharge any lien or encumbrance which is senior to Purchaser's security interest in the Collateral, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Payment Interest Charge shall accrue and shall be due and payable, (f) file in the name of Seller or Purchaser or both, (1) mechanics lien or related notices or (2) claims under any payment bond, in connection with goods or services sold by Seller in connection with the improvement of realty, and (g) notify any Account Debtor obligated with respect to any Account, that the underlying Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser, and (h) communicate directly with Seller's Account Debtors to verify the amount and validity of any Account created by Seller.

7.2. The Seller irrevocably authorizes the Purchaser at any time and from time to time to file any initial financing statements and amendments thereto that:

7.2.1. indicate the Collateral as all assets of the Seller or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC, or as being of an equal or lesser scope or with greater detail;

7.2.2. contain any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether the Seller is an organization, the type of organization, and any organization identification number issued to the Seller and, (ii) in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates; and

7.2.3. contain a notification that the Seller has granted a negative pledge to the Purchaser, and that any subsequent lienor may be tortuously interfering with Purchaser's rights;

7.3. advises third parties that any notification of Seller's Account Debtors will interfere with Purchaser's collection rights.

7.4. Seller hereby releases and exculpates Purchaser, its officers, employees and designees, from any liability arising from any acts under this Agreement or in furtherance thereof whether of omission or commission, and whether based upon any error of judgment or mistake of law or fact, except for willful misconduct. In no event will Purchaser have any liability to Seller for lost profits or other special or consequential damages. Without limiting the generality

KSL

of the foregoing, and release Purchaser from any claims which Seller may now or hereafter have arising out of Purchaser's endorsement and deposit of checks issued by Seller's customers stating that they were in full payment of an account, but issued for less than the full amount which may have been owed on the account.

7.5. Seller authorizes Purchaser to accept, indorse and deposit on behalf of Seller any checks tendered by an account debtor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the Uniform Commercial Code, or otherwise.

8. **ACH Authorization**. In order to satisfy any of the Obligations, Purchaser is hereby authorized by Seller to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Seller wherever located. .

9. **Covenants By Seller**.

9.1. After written notice by Purchaser to Seller, and automatically, without notice, after an Event of Default, Seller shall not, without the prior written consent of Purchaser in each instance, (a) grant any extension of time for payment of any of the Accounts, (b) compromise or settle any of the Accounts for less than the full amount thereof, (c) release in whole or in part any Account Debtor, or (d) grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of the Accounts.

9.2. From time to time as requested by Purchaser, at the sole expense of Seller, Purchaser or its designee shall have access, during reasonable business hours if prior to an Event of Default and at any time if on or after an Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Seller's books and records, and Seller shall permit Purchaser or its designee to make copies of such books and records or extracts therefrom as Purchaser may request. Without expense to Purchaser, Purchaser may use any of Seller's personnel, equipment, including computer equipment, programs, printed output and computer readable media, supplies and premises for the collection of accounts and realization on other Collateral as Purchaser, in its sole discretion, deems appropriate. Seller hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Purchaser at Seller's expense all financial information, books and records, work papers, management reports and other information in their possession relating to Seller.

9.3. Before sending any Invoice to an Account Debtor, Seller shall mark same with a notice of assignment: **Destiny Plastics, Inc.**, Post Office Box 7025 Santa Monica, CA 90401 as may be required by Purchaser.

9.4. Seller shall pay when due all payroll and other taxes, and shall provide proof thereof to Purchaser in such form as Purchaser shall reasonably require.

9.5. Seller shall not create, incur, assume or permit to exist any lien upon or with respect to any Collateral now owned or hereafter acquired by Seller.

Page 6 of 13

9.6. Seller shall maintain insurance (on a commercially reasonable basis and to the extent and against at least such risks (in any event, including but not limited to fire and business interruption insurance) as usually maintained by owners of similar businesses and properties in similar geographic areas. All such insurance shall be in amounts and form and with insurance companies acceptable to Purchaser in its sole discretion. Seller shall furnish to Purchaser: (a) upon written request, any and all information concerning such insurance carried; (b) as requested by Purchaser, lender loss payable endorsements (or their equivalent) in favor of Purchaser. All policies of insurance shall provide for not less than thirty- (30) day's prior written cancellation notice to Purchaser.

9.7. Notwithstanding that Seller has agreed to pay the Misdirected Payment Fee, Seller shall deliver in kind to Purchaser on the next banking day following the date of receipt by Seller of the amount of any payment on account of a Purchased Account.

9.8. **Avoidance Claims.**

9.8.1. Seller shall indemnify Purchaser from any loss arising out of the assertion of any Avoidance Claim and shall pay to Purchaser on demand the amount thereof.

9.8.2. Seller shall notify Purchaser within two business days of it becoming aware of the assertion of an Avoidance Claim.

9.8.3. This provision shall survive termination of this Agreement.

10. **Account Disputes**. Seller shall notify Purchaser promptly of and, if requested by Purchaser, will settle all disputes concerning any Purchased Account, at Seller's sole cost and expense. Purchaser may, but is not required to, attempt to settle, compromise, or litigate (collectively, "Resolve") the dispute upon such terms as Purchaser in its sole discretion deem advisable, for Seller's account and risk and at Seller's sole expense. Upon the occurrence of an Event of Default Purchaser may Resolve such issues with respect to any Account of Seller.

11. **Representation and Warranty**. Seller represents and warrants that:

11.1. It is fully authorized to enter into this Agreement and to perform hereunder;

11.2. This Agreement constitutes its legal, valid and binding obligation; and

11.3. Seller is solvent and in good standing in the State of its organization.

11.4. The Purchased Accounts are and will remain:

11.4.1. bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Seller's business;

11.4.2. unconditionally owed and will be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation;

KSV

11.4.3. Not sales to any entity which is affiliated with Seller or in any way not an "arms length" transaction.

11.5. Purchaser has not received notice of actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of any applicable account debtor regarding Purchased Accounts.

12. **Default.**

12.1. **Events of Default.** The following events will constitute an Event of Default hereunder: (a) Seller defaults in the payment of any Obligations or in the performance of any provision hereof or of any other agreement now or hereafter entered into with Purchaser, or any warranty or representation contained herein proves to be false in any way, howsoever minor, (b) Seller or any guarantor of the Obligations becomes subject to any debtor-relief proceedings, (c) any such guarantor fails to perform or observe any of such Guarantor's obligations to Purchaser or shall notify Purchaser of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever, (d) Purchaser for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations.

12.2. **Waiver of Notice.** SELLER WAIVES ANY REQUIREMENT THAT PURCHASER INFORM SELLER BY AFFIRMATIVE ACT OR OTHERWISE OF ANY ACCELERATION OF SELLER'S OBLIGATIONS HEREUNDER. FURTHER, PURCHASER'S FAILURE TO CHARGE OR ACCRUE INTEREST OR FEES AT ANY "DEFAULT" OR "PAST DUE" RATE SHALL NOT BE DEEMED A WAIVER BY PURCHASER OF ITS CLAIM THERETO.

12.3. **Effect of Default.**

12.3.1. Upon the occurrence of any Event of Default, in addition to any rights Purchaser has under this Agreement or applicable law, Purchaser may immediately terminate this Agreement, at which time all Obligations shall immediately become due and payable without notice.

12.3.2. The Late Payment Interest Charge shall accrue and is payable on demand on any Obligation not paid when due.

13. **Account Stated.** Purchaser shall render to Seller a statement setting forth the transactions arising hereunder. Each statement shall be considered correct and binding upon Seller as an account stated, except to the extent that Purchaser receives, within sixty (60) days after the mailing of such statement, written notice from Seller of any specific exceptions by Seller to that statement, and then it shall be binding against Seller as to any items to which it has not objected.

14. **Waiver.** No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which Purchaser may have, nor shall any such delay be construed to be a waiver of any of such rights, powers, or remedies, or any

KSL

acquiescence in any breach or default hereunder; nor shall any waiver by Purchaser of any breach or default by Seller hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to Purchaser hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of action begun to enforce, any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies that Purchaser would otherwise have. Any waiver, permit, consent or approval by Purchaser of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing and only as to that specific instance.

15. Termination; Effective Date.

15.1. This Agreement will be effective when accepted by Purchaser and shall be further annually extended automatically unless Seller shall indicate its intention to terminate at least sixty days prior to the next anniversary date hereof, whereupon this Agreement shall terminate on the next anniversary date hereof.

15.2. Purchaser may terminate this Agreement at any time.

15.3. Upon termination, Seller shall pay the Obligations to Purchaser, and Purchaser shall not purchase any Accounts from Seller.

16. Amendment. Neither this Agreement nor any provisions hereof may be changed, waived, discharged or terminated, nor may any consent to the departure from the terms hereof be given, orally (even if supported by new consideration), but only by an instrument in writing signed by all parties to this Agreement. Any waiver or consent so given shall be effective only in the specific instance and for the specific purpose for which given.

17. No Lien Termination without Release. In recognition of the Purchaser's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Seller, Purchaser shall not be required to record any terminations or satisfactions of any of Purchaser's liens on the Collateral unless and until Seller has executed and delivered to Purchaser a general release in the form of Exhibit B hereto. Seller understands that this provision constitutes a waiver of its rights under §9-513 of the UCC.

18. Conflict. Unless otherwise expressly stated in any other agreement between Purchaser and Seller, if a conflict exists between the provisions of this Agreement and the provisions of such other agreement, the provisions of this Agreement shall control.

19. Survival. All representations, warranties and agreements herein contained shall be effective so long as any portion of this Agreement remains executory.

20. Severability. In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and

enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

21. **Enforcement**.  This Agreement and all agreements relating to the subject matter hereof is the product of negotiation and preparation by and among each party and its respective attorneys, and shall be construed accordingly.  The parties waive the provisions of California Civil Code §1654.

22. **Relationship of Parties**.  The relationship of the parties hereto shall be that of Seller and Purchaser of Accounts, and Purchaser shall not be a fiduciary of the Seller, although Seller may be a fiduciary of the Purchaser.

23. **Attorneys Fees**.  Seller agrees to reimburse Purchaser on demand for:

23.1. the actual amount of all costs and expenses, including attorneys' fees, which Purchaser has incurred or may incur in:

23.1.1. negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith, all of which shall be paid contemporaneously with the execution hereof;

23.1.2. any way arising out of this Agreement;

23.1.3. protecting, preserving or enforcing any lien, security interest or other right granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought, including but not limited to the defense of any Avoidance Claims;

23.2. the actual costs, including photocopying (which, if performed by Purchaser's employees, shall be at the rate of $.10/page), travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process attendant to any litigation in which Seller is a party;;

23.3. The actual amount of all costs and expenses, including attorneys' fees, which Purchaser may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Seller, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (ii) opposing confirmation of Seller's plan thereunder.

24. **Entire Agreement**.  This Agreement supersedes all other agreements and understandings between the parties hereto, verbal or written, express or implied, relating to the subject matter hereof.  No promises of any kind have been made by Purchaser or any third party to induce Seller to execute this Agreement.  No course of dealing, course of performance or trade usage, and no parole evidence of any nature, shall be used to supplement or modify any terms of this Agreement.

25. <u>Choice of Law</u>.  This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the Chosen State.

26. <u>JURY TRIAL WAIVER</u>.  IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

27. <u>Venue; Jurisdiction.</u>  The parties agree that any suit, action or proceeding arising out of the subject matter hereof, or the interpretation, performance or breach of this Agreement, shall, if Purchaser so elects, be instituted in any court sitting in the Chosen State (the "Acceptable Forums").  Each party agrees that the Acceptable Forums are convenient to it, and each party irrevocably submits to the jurisdiction of the Acceptable Forums, irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement, and waives any and all objections to jurisdiction or venue that it may have under the laws of the Chosen State or otherwise in those courts in any such suit, action or proceeding.  Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Purchaser as a consequence of such proceeding having been commenced in a forum other than an Acceptable Forum.

28. <u>Notice.</u>

28.1. All notices required to be given to any party other than Purchaser shall be deemed given upon the first to occur of (i) deposit thereof in a receptacle under the control of the United States Postal Service, (ii) transmittal by electronic means to a receiver under the control of such party; or (iii) actual receipt by such party or an employee or agent of such party.

28.2. All notices to Purchaser hereunder shall be deemed given upon actual receipt by a responsible officer of Purchaser.

28.3. For the purposes hereof, notices hereunder shall be sent to the following addresses, or to such other addresses as each such party may in writing hereafter indicate:

KSC

**SELLER**

Address:       31981 Dove Canyon Drive
                      Trabuco Canyon, CA 92679

Officer:        Kevin S. McMullin-President
Phone/Fax:   949-709-~~2683~~/949-709-2683
                      1985

**PURCHASER**

Address:       233 Wilshire Boulevard #850
                      Santa Monica CA 90401

Officer:        Robert Schuster-President
Phone/Fax:   310-656-~~6801~~/310-656-6801
                      6800

29. **Counterparts.** This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

30. **Assignment.** Purchaser may assign its rights and delegate its duties hereunder. Upon such assignment, Seller shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Purchaser.

IN WITNESS WHEREOF, the Parties have executed this agreement on the day and year first above written.

SELLER:

                      Destiny Plastics, Inc

                      By: _____
                      Name: Kevin S. McMullin
                      Title: President

PURCHASER:

                      Premium Financial Services

                      By: _____
                      Name: Robert Schuster
                      Title: President



**[PFS] PREMIUM FINANCIAL SERVICES**
• ACCOUNTS RECEIVABLE FACTORING •

## ADDENDUM

This Addendum is to the Factoring and Security Agreement dated March 25, 2002, between Destiny Plastics, Inc., hereinafter "CLIENT" and PREMIUM FINANCIAL SERVICES, hereinafter "PFS".

Whereas CLIENT desires to continue factoring or otherwise extending credit under the original Factoring and Security Agreement and PFS desires to continue factoring or otherwise extending credit to CLIENT under the same original Factoring and Security Agreement, both parties hereby agree to the following change(s) to the Factoring and Security Agreement:

Increase in Credit Limit from $200,000.00 to $400,000.00.

All other provisions, rights, remedies and powers contained in the Factoring and Security Agreement remain in full force and effect.

Dated: April 18, 2003

PREMIUM FINANCIAL SERVICES                    DESTINY PLASTICS, INC.

BY: _____                     BY: _____
Robert Schuster-President                        Kevin McMullin-President

BARRY LANGFELDER
Commission #1230340
Notary Public – California
Orange County
My Comm. Expires Jul 29, 2003

Barry Langfelder - See Attached

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_ } ss.

On _May 7, 2003_ before me, _Barry Langfelder, a Notary Public._
Date                     Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Kevin McMullin_
Name(s) of Signer(s)

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

BARRY LANGFELDER
Commission # 1230340
Notary Public - California
Orange County
My Comm. Expires Jul 29, 2003

---

## OPTIONAL

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

### Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827



## ADDENDUM

This Addendum is to the Factoring and Security Agreement dated March 25, 2002, and the Addendum to the Factoring and Security Agreement dated April 18, 2003, between Destiny Plastics, Inc., hereinafter "CLIENT" and PREMIUM FINANCIAL SERVICES, hereinafter "PFS".

Whereas CLIENT desires to continue factoring or otherwise extending credit under the original Factoring and Security agreement and PFS desires to continue factoring or otherwise extending credit to CLIENT under the same original Factoring and Security Agreement, both parties hereby agree to the following changes to the Factoring and Security Agreement:

> Increase in Maximum Credit Limit from $400,000.00 to $1,000,000.00

> Replace Section 1.17 of the Factoring and Security Agreement with the following:
> "1.17. "Purchase Price" - the Face Amount less the Initial Fee."

All other provisions, rights, remedies and powers contained in the Factoring and Security Agreement remain in full force and effect.

Dated: November 3, 2005

**PREMIUM FINANCIAL SERVICES**

BY: _____
Robert Schuster, President

**DESTINY PLASTICS, INC.**

BY: _____
Kevin S. McMullin, President



## ADDENDUM

This Addendum is to the Factoring and Security Agreement dated March 25, 2002, and the Addendum to the Factoring and Security Agreement dated April 18, 2003, between Destiny Plastics, Inc., hereinafter "CLIENT" and PREMIUM FINANCIAL SERVICES, hereinafter "PFS".

Whereas CLIENT desires to continue factoring or otherwise extending credit under the original Factoring and Security agreement and PFS desires to continue factoring or otherwise extending credit to CLIENT under the same original Factoring and Security Agreement, both parties hereby agree to the following changes to the Factoring and Security Agreement:

Increase in Maximum Credit Limit from $400,000.00 to $1,000,000.00

Replace Section 1.17 of the Factoring and Security Agreement with the following:
"1.17. "Purchase Price" - the Face Amount less the Initial Fee."

All other provisions, rights, remedies and powers contained in the Factoring and Security Agreement remain in full force and effect.

Dated: July 19, 2005

PREMIUM FINANCIAL SERVICES

BY: _____
Robert Schuster, President

DESTINY PLASTICS, INC.

BY: _____
Kevin S. McMullin, President



**PremiumFinancial**
Services

## ADDENDUM

This Addendum is to the Factoring and Security Agreement dated March 25, 2002, and the Addendum to the Factoring and Security Agreement dated April 18, 2003, between Destiny Plastics, Inc., hereinafter "CLIENT" and PREMIUM FINANCIAL SERVICES, hereinafter "PFS".

Whereas CLIENT desires to continue factoring or otherwise extending credit under the original Factoring and Security agreement and PFS desires to continue factoring or otherwise extending credit to CLIENT under the same original Factoring and Security Agreement, both parties hereby agree to the following changes to the Factoring and Security Agreement:

Increase in Maximum Credit Limit from $400,000.00 to $1,000,000.00

Replace Section 1.17 of the Factoring and Security Agreement with the following:
"1.17. **"Purchase Price"** - the Face Amount less the Initial Fee."

All other provisions, rights, remedies and powers contained in the Factoring and Security Agreement remain in full force and effect.

Dated: July 19, 2005

PREMIUM FINANCIAL SERVICES

BY: _____
Robert Schuster, President

DESTINY PLASTICS, INC.

BY: _____
Kevin S. McMullin, President

EXHIBIT "B"

**Open Invoices / Invoices with Remaining Balances**

| Invoice # | P.O. | Invoice Amt | Paid | Open Balance | Payment Status |
|---|---|---|---|---|---|
| 115581 | 115581 | $11,139.00 | $0.00 | $11,139.00 | |
| 123796* | 123796 | $12,540.00 | $0.00 | $12,540.00 | |
| 132940* | 132940 | $9,994.92 | $0.00 | $9,994.92 | |
| 207510 | 120796 | $51,665.44 | $44,884.32 | $6,781.12 | |
| 207623* | 123606 | $8,445.12 | $0.00 | $8,445.12 | |
| 207631* | unknown | $32,000.00 | $0.00 | $32,000.00 | |
| 207675 | 123796 | $12,688.56 | $11,592.54 | $1,096.02 | |
| 207784 | 125622 | $53,007.96 | $47,942.64 | $5,065.32 | |
| 207851 | 126417 | $32,786.88 | $28,103.04 | $4,683.84 | |
| 207925 | 124531 | $2,479.68 | $0.00 | $2,479.68 | |
| 207928 | 124533 | $13,536.00 | $0.00 | $13,536.00 | |
| 207969** | 127195 | $1,353.60 | $0.00 | $1,353.60 | |
| 208032 | 128437 / 128200 | $52,269.96 | $50,577.96 | $1,692.00 | |
| 208037 | 128436 | $36,825.00 | $35,585.16 | $1,239.84 | |
| 208053 | 128600 | $41,254.32 | $36,825.00 | $4,429.32 | |
| 208054 | 128603 | $66,462.72 | $8,455.80 | $58,006.92 | |
| 208077 | 123605 | $41,410.92 | $0.00 | $41,410.92 | |
| 208078 | 123604 | $47,116.80 | $0.00 | $47,116.80 | |
| 208125 | 129551 | $50,530.08 | $48,725.28 | $1,804.80 | |
| 208139 | 129554 | $50,232.60 | $45,999.00 | $4,233.60 | |
| 208159 | 130200 | $48,949.68 | $0.00 | $48,949.68 | |
| 208168 | 129560 | $34,440.00 | $0.00 | $34,440.00 | |
| 208179 | 129810 | $48,028.56 | $0.00 | $48,028.56 | |
| 208181 | 129812 | $35,731.20 | $0.00 | $35,731.20 | |
| 208191 | 129814 | $38,987.52 | $0.00 | $38,987.52 | |
| 208196 | 131004 | $62,744.76 | $59,805.96 | $2,938.80 | |
| 208197 | 131007 | $44,129.76 | $16,379.16 | $27,750.60 | |
| 208305 | 131005D | $11,749.20 | $0.00 | $11,749.20 | |
| 208310** | 131008D | $8,089.92 | $592.20 | $7,497.72 | |
| 208311** | 133101 | $47,900.40 | $0.00 | $47,900.40 | |
| 208312 | 131972 | $49,304.76 | $33,612.92 | $15,691.84 | |
| 208313 | 131005E | $4,918.80 | $0.00 | $4,918.80 | |
| 208318 | 131977 | $48,704.52 | $38,245.20 | $10,459.32 | |
| 208330 | 131967 | $50,156.76 | $40,452.24 | $9,704.52 | |
| 208372** | 131973 | $59,120.16 | $0.00 | $59,120.16 | |
| 208389** | 132939 | $52,477.08 | $0.00 | $52,477.08 | |
| 208390** | 132937 | $57,240.60 | $0.00 | $57,240.60 | |
| 208406 | 132938 | $49,677.36 | $15,000.00 | $34,677.36 | |
| 208475 | 132940 | $551.04 | $0.00 | $551.04 | |
| 299699 | 122269 | $17,503.68 | $0.00 | $17,503.68 | |
| | | | | | |
| Total | | | | $835,366.90 | |
| | | | | | |

*Invoice Copy Not Included In Paperwork
**Invoice Paperwork Issue Per Amscan

# EXHIBIT 2

DAVID F. FAUSTMAN, SBN 081862
JAVIER C. RIVERA, SBN 243631
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067-3005
Tel: 310.598.4150
Fax: 310.556.9828

Attorneys for Defendant
AMSCAN INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

## WEST DISTRICT – SANTA MONICA COURTHOUSE

| | |
|---|---|
| A-1 BUSINESS PRODUCTS, INC. DBA PREMIUM FINANCIAL SERVICES, <br><br> Plaintiff, <br><br> vs. <br><br> AMSCAN, INC. DBA CALIFORNIA AMSCAN INCORPORATED AND DOES 1 TO 50, INCLUSIVE, <br><br> Defendant. | CASE NO. SC102817 <br><br> **DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT** <br><br> Assigned to: <br>     Hon. Elizabeth Grimes <br><br> Action Filed:   April 27, 2009 <br> Trial Date:    None Set |

LA1 20233v1 06/04/09

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

1  Defendant AMSCAN INC. ("Defendant"), by and through its attorneys of record, hereby

2  responds to Plaintiff A-1 BUSINESS PRODUCTS, INC. DBA PREMIUM FINANCIAL

3  SERVICES's ("Plaintiff") unverified Complaint as follows:

4  **General Denial**

5  Pursuant to Code of Civil Procedure section 431.30, subdivision (d), Defendant generally

6  denies each and every allegation contained in the unverified Complaint, denies that Plaintiff has

7  suffered any injury, damage or loss by reason of any act or omission on its part, denies specifically

8  that Plaintiff has suffered any injury, damage or loss by reason of any act or omission on its part,

9  and denies specifically that Plaintiff is entitled to any relief whatsoever, whether legal or equitable

10 against Defendant.

11 **AFFIRMATIVE DEFENSES**

12 For its affirmative defenses, Defendant alleges as follows:

13 **FIRST AFFIRMATIVE DEFENSE**

14 **(Improperly Named Entity)**

15 Plaintiff improperly named the Defendant as Amscan, Inc. dba California Amscan

16 Incorporated.  The true name of the Defendant identified in the Complaint is actually Amscan Inc.

17 **SECOND AFFIRMATIVE DEFENSE**

18 **(Failure to State a Claim)**

19 Plaintiff's Complaint, and each purported cause of action contained therein, fails to state

20 facts sufficient to state a cause of action against Defendant.

21 **THIRD AFFIRMATIVE DEFENSE**

22 **(Lack of Standing to Sue)**

23 Plaintiff lacks standing to seek some or all of the relief sought in the complaint because

24 Defendant is not a contracting party and has no obligation to perform the alleged contract.

25 Accordingly, no relief may be obtained against this Defendant..

26

27

28

LA1 20233v1 06/03/09   DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Register as a Secured Creditor)

Plaintiff has failed to state a cause of action and lacks standing to sue because it has not fully complied with the UCC filing requirements for secured creditors.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Follow UCC Procedures)

The complaint is barred because the applicable UCC administrative procedures and conditions precedent were not properly effectuated, exhausted or complied with prior to the commencement of this action.

## SIXTH AFFIRMATIVE DEFENSE

### (Statutes of Limitation)

Plaintiff's claim is barred by the applicable statutes of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

### (Justification)

At all times material hereto, the actions of Defendant were justified under the circumstances and at all times material hereto Defendant acted in a manner that was proper, reasonable, lawful, and in the exercise of good faith.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Plaintiff's right to damages, if any, is limited or precluded by its failure to mitigate its losses.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

Plaintiff unreasonably delayed in its investigation and prosecution of the claims alleged in the Complaint. Such delay is to the detriment and prejudice of Defendant. Therefore, Plaintiff is barred from recovery against the Defendant by virtue of the doctrine of laches.

LA1 20233v1 06/03/09    DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

### TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

By conduct, representation and omissions, Plaintiff has waived, relinguished and/or abandoned and is equitably estopped from asserting any claim for relief against Defendant respecting the matters that are the subject of Complaint.

### ELEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred because Plaintiff has unclean hands.

### TWELFTH AFFIRMATIVE DEFENSE

### (Consent)

Any recovery on Plaintiff's Complaint, or any purported cause of action contained therein, is barred because Plaintiff consented to the alleged conduct.

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

Plaintiff's claims are barred by the Doctrine of Accord and Satisfaction.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

Plaintiff's claims are barred by the Statute of Frauds, including the provisions contained in Civil Code § 1624 and Code of Civil Procedure § 1974.

### FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure of Condition Precedent)

If an agreement existed between Defendant and Plaintiff, which Defendant denies, any failure by Defendant to perform any obligations resulted from Plaintiff's failure to perform its own obligations, as required by the terms of that alleged agreement, and the performance on Plaintiff's part of its own obligations was a condition precedent to or concurrent with the performance of Defendant's obligations.

4

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Excuse)

If an agreement existed between Plaintiff and Defendant, which Defendant denies, recovery on any purported agreement is barred because Plaintiff committed a prior breach, excusing any duty of further performance by Defendant.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Impossibility)

Performance of the contract has become impossible or totally impracticable through no fault of Defendant, and accordingly, Plaintiff's claim is without merit.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Frustration of Purpose)

Plaintiff's claims are barred due to the frustration of the purpose of the contract.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Complete Performance)

Defendant has fully performed all conditions, covenants, and promises legally required of it under the terms of the purported contract.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

Plaintiff would be unjustly enriched if allowed to recover on this Complaint.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Offset)

Without conceding that any act of Defendant caused damage to the Plaintiff in any respect, Defendant is entitled to offset and recoup against any judgment that may be entered for the Plaintiff and all obligations of the Plaintiff owing to Defendant.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Mutual Mistake)

Plaintiff's claims are barred by the doctrine of mutual mistake.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Lack of Damages)

Plaintiff did not suffer any detriment or damages in any amount whatsoever.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Lack of Contract/Lack of Privity)

Plaintiff's claims are barred because Plaintiff did not enter into either an oral or written contract with Defendant.

Defendant currently has insufficient information upon which to form a belief as to whether they may have additional, yet unstated affirmative defenses available.  Defendant reserves the right to assert additional affirmative defenses in the event discovery indicates they would be appropriate.

WHEREFORE, Defendant respectfully requests that:

1.   Plaintiff take nothing by its Complaint;

2.   That the Complaint be dismissed with prejudice;

3.   Defendant be awarded its attorneys' fees and costs incurred to defend this action; and

4.   For such other and further relief as the Court finds just and proper.

Dated: June 4, 2009

FOX ROTHSCHILD LLP

By _____

DAVID F. FAUSTMAN
JAVIER C. RIVERA
Attorneys for Defendant
AMSCAN INC.

6

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to this action; my business address is: 1800 Century Park East, Suite 300, Los Angeles, California 90067.

On June 4, 2009, I served the foregoing DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT on the interested party in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Robert A. Weinberg, Esq.
Law Offices of Robert A. Weinberg
18034 Ventura Blvd. #511
Encino, CA 91316-3516

[ x ] **BY FIRST CLASS MAIL:** I caused said document(s) to be deposited in a facility regularly maintained by the United States Postal Service on the same day, in a sealed envelope, with postage paid, addressed to the above listed person(s) on whom it is being served in Los Angeles, California for collection and mailing on that date following ordinary business practices.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct.

Executed this 4th day of June 2009 at Los Angeles, California.

Jessica Lenik

LA1 20196v1 06/02/09

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to this action; my business address is: 1800 Century Park East, Suite 300, Los Angeles, California 90067.

On June 4, 2009, I served the foregoing **NOTICE OF REMOVAL** on the interested party in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Robert A. Weinberg, Esq.
Law Offices of Robert A. Weinberg
18034 Ventura Blvd. #511
Encino, CA 91316-3516

[ x ]   **BY FIRST CLASS MAIL:** I caused said document(s) to be deposited in a facility regularly maintained by the United States Postal Service on the same day, in a sealed envelope, with postage paid, addressed to the above listed person(s) on whom it is being served in Los Angeles, California for collection and mailing on that date following ordinary business practices.

I declare under penalty of perjury and the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 4th day of June 2009 at Los Angeles, California.

_Jessica Lenik_
Jessica Lenik

LA1 20196v1 06/02/09

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## CV09- 4016 SJO (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| A-1 BUSINESS PRODUCTS, INC. DBA PREMIUM FINANCIAL SERVICES | AMSCAN INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Robert A. Weinberg, Esq., Law Offices of Robert A. Weinberg<br>18034 Ventura Blvd. #511, Encino, CA 91316<br>818.705.3254 | David F. Faustman<br>Fox Rothschild LLP<br>1800 Century Park East, Ste. 300, Los Angeles, CA 90067<br>310.598.4150 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ 835,366.90

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Defendant seeks to remove the action filed in state court based on 28 USC 1332. The citizenship of Plaintiff and Defendant are completely diverse.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **CV09 04016**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**



## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　　☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　　☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　　☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐　Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐　Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Westchester County, New York |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
　　**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note: In land condemnation cases, use the location of the tract of land involved**

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date June 4, 2009

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |